UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ernestine Adams,

        Plaintiff,

                                        **MEMORANDUM OPINION**
v.                                     **AND ORDER**
                                        Civil No. 13-154 ADM/SER

Scalzo Hospitality, Inc.,
d/b/a Ramada Plaza
Minneapolis,

        Defendant.

___

J. Poage Anderson, Esq. and Emma R. Denny, Esq., Fabian May & Anderson, PLLP, Minneapolis, MN, on behalf of Plaintiff.

James B. Sherman, Esq., Chad A. Staul, Esq., and Phoebe Taurick, Esq., Wessels Sherman Joerg Liszka Laverty Seneczko P.C., Minnetonka, MN, on behalf of Defendant.

___

## I. INTRODUCTION

On January 30, 2014, the undersigned United States District Court Judge heard oral argument on Plaintiff Ernestine Adams' ("Adams") Motion for Summary Judgment [Docket No. 16]. The Court also heard argument on Defendant Scalzo Hospitality, Inc.'s ("Scalzo") Motion for Summary Judgment [Docket No. 25]. For the reasons set forth below, Adams' motion for summary judgment is denied, and Scalzo's motion for summary judgment is granted.

## II. BACKGROUND

**A. Adams' Employment at Scalzo**

Adams is a former employee of Scalzo and alleges retaliation and interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Compl. [Docket No. 1]; Answer [Docket No. 8]. On or about June 17, 2011, Adams began working for Scalzo at

the Ramada Plaza Minneapolis as a housekeeping supervisor.  See Answer ¶ 5.  Adams had several attendance issues throughout her employment at Scalzo.  See Emma R. Denny Aff. [Docket No. 19] Ex. C ("Adams Dep.") 50-80.  Adams was warned of her attendance and other performance problems, including through a "progressive disciplinary action time frame report" which she signed on August 8, 2012, during a meeting with her supervisor.  Phoebe Taurick Decl. [Docket No. 24] Ex. A.  The first page of the report outlined Adams' performance issues.  Id.  The second page of the report recorded two attendance infractions and states "[f]ailure to improve the items on the action plan will result in further disciplinary action up to and including termination of employment."  Id.  Adams testified that she did not see the first page of the report until this lawsuit began, and that her supervisor was not concerned with her attendance issues during their August meeting.  Adams Dep. 59-68.  Adams was written up four more times for attendance issues between August 10 and August 31, 2012.  Id. at 68-80.

**B.  Car Accident and Doctor's Notes**

Adams was in a car accident on September 1, 2012.  Id. at 96-101.  On September 2, Adams came to work for the full day, but went to the emergency room directly after clocking out.  Id. at 102-04.  At the hospital Adams obtained a doctor's note excusing her from work until September 5.  Id. at 109, 123; Adams Dep. Ex. 15.  On September 3, Adams told the Ramada manager-on-duty that she was not supposed to be at work, but would nevertheless open up the front desk.  Adams worked from 7:00 a.m. to 10:30 a.m.  Adams Dep. 108-11.  Adams gave the doctor's note to her supervisor, who forwarded it to Elizabeth Sobolik ("Sobolik"), Scalzo's Director of Human Resources.  Id.

From September 5 through October 1, Adams attended doctor appointments at Metro

Injury on six occasions.  Denny Aff. Ex. E ("Sobolik Dep.") 23-26.  After each of Adams' visits, Metro Injury faxed Scalzo a doctor's note.  Id. at 23-26, Exs. 20-21; Adams Dep. Ex. 15, at 3-8.  Each note had a "diagnosis" line and a "remark" line.  Adams Dep. Ex. 15.  The notes were terse and provided limited information.  The note on September 5 identified the general areas of Adams' pain and recommended "off work for 5 days."  Each subsequent note recorded the same areas of injury and recommended additional days off.[1]  Taken together, the notes recommended Adams be excused from work from September 5 through October 2, and be given limited work from October 3 through October 10, 2012.  Id.  Scalzo scheduled Adams to work on eight occasions between September 2 and 15.  Adams Dep. Exs. 13-14.  On each of these occasions, Scalzo scheduled Adams to work on dates not yet covered by a doctor's note at the time of scheduling.

Adams relied on the doctor's faxed notes through Metro Injury and did not contact Scalzo at all between September 4 and October 2.  Sobolik Dep. 26-27.  Scalzo called Adams on September 15, but did not reach her and did not leave a message.  Id. at 43-44; Adams Dep. 148-50.  Adams has given conflicting testimony about whether she called Scalzo back that day, but it is undisputed that she did not talk to a supervisor or Sobolik.  Id.  Having heard nothing from Adams beyond the doctor's notes, on September 18, Sobolik mailed Adams a packet of FMLA information and a medical certification form which Adams would need to return by October 4 if she sought FMLA leave status.  Sobolik Dep. 36-42, Ex. 22.  This packet did not reach Adams because she had moved on September 1, 2012 and did not notify Scalzo of her change of address

---

[1] Date of faxed note (recommended time off from work): September 10, 2012 (9/10-9/18); September 18 (9/19-9/20) "needs to get an MRI to determine extent of injury"; September 20 (9/20-9/24); September 25 (9/26-9/27); September 27 (9/27-10/2).  Adams Dep. Ex. 15.

as required by Scalzo's employee policy.  Id. at 38-39; Adams Dep. 144-47.

On October 2, 2012, Metro Injury faxed a note to Scalzo indicating Adams could return to work with restrictions.  Sobolik Dep. Ex. 27.  Adams phoned Scalzo on October 2 to contact her supervisor, but was redirected to Sobolik.  Adams Dep. 138-41.  Sobolik asked Adams to come in for a meeting the next day, and Adams agreed.  Id.

**C.  Meeting Between Adams and Scalzo**

Adams met with Sobolik on October 3, 2012.  Id. at 141-51.  Sobolik and Adams discussed Adams' car accident and her absence from work during the month of September.  Id. at 143-44, 148-51.  Sobolik told Adams she had been unable to reach Adams by mail.  Adams told Sobolik that was because she moved September 1, 2012.  Id. at 144.  Adams gave no reason why she could not have called Scalzo during her month absence.  Id. at 151.  Sobolik did not give Adams the undelivered FMLA packet with the medical certification form on October 3.  Sobolik Dep. 54-55, 60, 72.  The due date on the FMLA medical certification form was October 4, the next day.  Sobolik Dep. 36-42, Ex. 22.

Between October 3 and October 9, Scalzo did not schedule Adams for any shifts.  Sobolik Dep. 59-60.  Sobolik testified that she was concerned about Adams' attendance violations during September, but did not fire Adams between October 3 and 9 because she was seeking advice of legal counsel regarding the situation.  Id. at 61.

At an October 9, 2012 meeting, Sobolik notified Adams her employment was terminated.  Id. at 60-62.  Scalzo contends Adams was terminated for violations of Scalzo's time and attendance policy.  Id.

**D. Scalzo's Time and Attendance and FMLA Policies**

Scalzo has a policy for time and attendance, and an FMLA policy. Adams Dep. Ex. 12, 16-19, 23-27. The time and attendance policy includes a section called "Proper Call-In Procedures." Id. at 24. This section states:

> Associates are required to notify their Manager or Immediate Supervisor a minimum of (2) hours before their scheduled start time in the event of either an unscheduled absence or lateness. In the event that an Associate calls when a Supervisor or Manager is not available, they must leave a message stating that they will be late or absent and why. They are then required to continue to call until they have spoken directly with a Manager or Supervisor about the situation. . . . Failure to follow this procedure will be considered an improper call-off, which is an attendance policy infraction, and may result in disciplinary action up to and including termination.

Id. The time and attendance policy also includes a section called "Absences That Are Not Considered Attendance Infractions." Id. That section states, "[i]ndustrial accident or illness, military duty, jury duty, observed holidays, funeral leave, PTO time, approved FMLA and any similar pre-approved time away from work is not considered when counting attendance infractions . . . ." Id.

The FMLA leave policy states:

> If the leave is unanticipated, the Associate must give as much advance notice as possible when the need for leave becomes known. Scalzo Hospitality will determine the leave as FMLA leave and/or leave under any applicable state or local leave statute. The Associate will be provided with information detailing the specific expectations and obligations of the Associate and explaining the consequences of any failure to meet those obligations.

Id. at 17. Additionally, the FMLA policy requires a "Certification of Physician or Practitioner" to verify the seriousness of an employee's medical condition. Id. The policy states, "[t]his medical certification must be provided within fifteen (15) calendar days after being requested by Scalzo Hospitality. Not complying with this request to provide certification is grounds for delay

5

or denial of leave. This may result in disciplinary action up to and including termination of employment." Id.

Adams argues her faxed doctor's notes satisfy FMLA notice requirements. Scalzo argues Adams did not comply with FMLA, as she did not call in her absences according to Scalzo's normal call-in procedures.

### III. DISCUSSION

#### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states a court shall grant summary judgment if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate. Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (citations omitted). However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . . Instead, 'the dispute must be outcome determinative under prevailing law.'" Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).

#### B. FMLA Overview

"One of the purposes of the FMLA is 'to entitle employees to take reasonable leave for medical reasons.'" Bosley v. Cargill Meat Solutions Corp., 705 F.3d 777, 779 (2013) (quoting 29 U.S.C. § 2601(b)(2)). The FMLA entitles an employee to twelve workweeks of leave during any twelve month period if the employee has a "serious health condition that makes the

employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is any "illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

Adams styles her claims against Scalzo as "interference" and "retaliation" claims. The Eighth Circuit holds that "interference" claims are more aptly called "entitlement" claims. Bosley, 705 F.3d at 780. "In an entitlement claim, an employee claims the denial of a benefit to which he is entitled under the statute." Id. "In a retaliation claim, on the other hand, an employee claims that the employer took adverse action against the employee for opposing any practice made unlawful under the FMLA." Id. (citations and internal quotations omitted).

**C. Adams' Entitlement Claim**

An employee taking FMLA leave generally has the right to be reinstated to the position they occupied when they went on leave, or an equivalent position. 29 U.S.C. § 2614(a)(1). However, "an employee may be dismissed, preventing her from exercising her statutory right to FMLA" when the dismissal would have occurred regardless of the FMLA leave. Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 979 (8th Cir. 2005) (citations omitted).

"In order to benefit from the protections of the statute, an employee must provide [her] employer with enough information to show that [s]he may need FMLA leave." Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005). Although the employee need not identify the statute, she must provide enough information to suggest that her health condition could be serious. Id. at 990. "Employees thus have an 'affirmative duty to indicate both the need and the reason for the leave,' and must let employers know when they anticipate returning

to their position." Id. (quoting Sanders v. May Dep't Stores Co., 315 F.3d 940, 944 (8th Cir. 2003)).

The Department of Labor has issued regulations, pursuant to the authority granted by § 2654 of the FMLA, governing the respective notice obligations of employers and employees. 29 C.F.R. § 825.303 (2012). At the relevant times, those regulations provided[2]:

> Employee notice requirements for unforeseeable FMLA leave.
> (a) Timing of notice. When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. See § 825.303(c). . . . For example, if an employee's child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment. However, if the child's asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.
>
> (b) Content of notice. An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job; . . . whether the employee . . . is under the continuing care of a health care provider; . . . and the anticipated duration of the absence, if known. When an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. . . . [But, c]alling in "sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act. The employer will be expected to obtain any additional required information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying. Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying.

---

[2] The language of 29 C.F.R. § 825.303 was subsequently amended, effective February 6, 2013.

> (c) Complying with employer policy. When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.

Id. The Eighth Circuit has a "rigorous notice standard for employees seeking to use FMLA leave for absences." Bosley, 705 F.3d at 780.

Adams contends Scalzo was on notice of her potential need for FMLA leave because she went to work, handed the manager-on-duty a doctor's note, and then had further doctor's notes faxed to Scalzo each time she had a doctor's appointment in September 2012.[3] Scalzo replies that although it received the notes, they were piecemeal in nature and did not include detailed information about Adams' condition. Scalzo also argues that since Adams did not call in once between September 3, 2012 and October 2, 2012, she did not appropriately notify Scalzo of her need for FMLA leave. Adams replies that although the first note may not have triggered FMLA

---

[3] Adams argues that her doctor's notes put Scalzo on notice that she had a "serious health condition." Pl.'s Mem. Opp'n to Mot. Summ. J. [Docket No. 34] 3-4. The argument appears to be that Adams' doctor's notes cumulatively indicated she had a serious health condition. Under 5 C.F.R. § 630.1202 (2012), the definition of a serious health condition includes needing continuing treatment by a health care provider, which includes "a period of incapacity of more than 3 consecutive calendar days." But, Adams admits that the first doctor's note was not sufficient to automatically put Scalzo on notice of her need for FMLA leave because it only recommended Adams take off until September 5, which was only two days. In addition, based on the first note and Adams' in-person communication with Scalzo, Adams was not going to miss any scheduled work days, as she was scheduled to work again on September 6. However, the significant issue here is Adams' notice to Scalzo of her condition and need for FMLA leave.

9

notice, subsequent notes put Scalzo on notice of her need for FMLA leave. In addition, Scalzo's attempted mailing of FMLA materials to Adams indicates that Scalzo was on notice of Adams' need for FMLA leave.

Adams did not meet her notification requirements. The Department of Labor regulations are clear. "When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c)(2012). Adams does not argue that her case presents unusual circumstances. Therefore, Scalzo's usual absence policy governs how she needed to inform Scalzo of her unanticipated absences. Scalzo's usual call-in procedures are also clear. Scalzo requires employees call and speak directly with a manager or supervisor to discuss the need for time off.

It is undisputed Adams' injury on September 1, 2012, was unforeseeable. On September 2, Adams came to work, but went to the emergency room directly after clocking out. The next day, September 3, Adams came to work and told the manager-on-duty that her doctor had advised she not work that day. Presumably, realizing that the short notice might put Scalzo in a bind, Adams worked that morning until 10:30 a.m. She then gave her doctor's note to the manager-on-duty and went home. The doctor's note recommended Adams not work until September 5. On September 5, Adams went back to Metro Injury for further evaluation. Scalzo received a fax from Metro Injury that the doctor recommended Adams take off work from September 5 through September 9, 2012. Because her work schedule had been posted August 30, Adams knew she was scheduled to work September 6 and September 8, 2012. But Adams did not call Scalzo, or leave a message describing or explaining her injury or her need for time

off. Adams did not speak directly with her manager or supervisor until October 2, 2012 when she called Scalzo.

Since Adams does not argue she was too seriously injured to call, there is no genuine dispute Adams failed to appropriately give Scalzo notice of her need for time off and Adams was not entitled to FMLA leave.

Adams contends Scalzo is "estopped" from arguing Adams' entitlement to FMLA leave. Pl.'s Mem. Opp'n Mot. Summ. J. 3-4 (relying on Parsons v. Principal Life Inc. Co., 686 F. Supp. 2d 906, 915 (S.D. Iowa 2010)). Adams argues that regardless of her obligations to notify Scalzo of her need for FMLA leave, Scalzo knew Adams was entitled to FMLA leave for two overlapping reasons. First, Scalzo sent out an FMLA certification packet on September 18, and even though Adams did not receive the materials, the mailing is evidence that Scalzo was on notice of her need for FMLA leave. Second, the packet stated that an employee has 15 days to certify her FMLA leave request, which made it due on October 4, 2012. Adams argues that when Adams met with Sobolik on October 3, 2012, Adams had one more day to certify her FMLA leave, but Sobolik failed to give her the FMLA packet. Adams argues she was entitled to receive the packet and have it filled out by the next day.

An employee's sufficient FMLA notice "triggers employer obligations." 29 C.F.R. § 825.303. Once on notice, an employer can either accept its employee's request for FMLA leave or ask the employee to certify her need for FMLA leave. Id. If Adams had been too incapacitated to call in between September 5 and October 2, 2012, then this may have become an genuine issue of material fact, suggesting a dispute about how Scalzo and Adams should have handled unusual circumstances. But Sobolik testified she asked Adams if there was any reason

11

Adams did not call in for a month and Adams admitted that she could have called. Adams has never claimed that she was incapable of communicating directly with her Scalzo supervisors. Therefore, Sobolik had no obligation to give Adams a chance to obtain certification for an FMLA leave to which Adams was not entitled. The FMLA encourages employers and employees to each make their best efforts to communicate. Adams negated any efforts by her employer to communicate with her. She did not call; she did not stop in again; she did not get in contact with a supervisor even when she saw that she had a missed call from Scalzo on September 15. And finally, Adams moved residences without informing her employer, which made it impossible for Scalzo to communicate with her by mail.

Adams' comparison to Parsons is inapposite. Parsons was analyzed under a different version of the FMLA regulations. The regulations applicable here became effective January 16, 2009, and the facts in Parsons occurred in 2008. Also, the issue of notice was not in dispute in Parsons. Id. at 912. The defendant in Parsons admitted the plaintiff had given timely notice and that it was aware of the length of time the plaintiff would be absent. In Parsons, the issue was the plaintiff's responsibilities after notice but before FMLA certification confirmation. The defendant employer argued the plaintiff had failed to daily update it on her status according to its absence policy. The Court in Parsons found a factual dispute as to whether the defendant was "permitted to require [p]laintiff to comply with its absence reporting policy in this case since the policy arguably failed to 'take into account all of the relevant facts and circumstances related to [plaintiff's] leave situation,' as required by 29 C.F.R. § 825.309(a)." Id.

In Adams' case, the then-relevant regulations are clear about Adams' responsibilities to inform her employer of her unanticipated FMLA leave. On September 18, fifteen days after

Adams stopped communicating directly with Scalzo, Sobolik's decision to send Adams an FMLA packet indicates concern Adams' health situation had deteriorated.  It should not serve to excuse Adams' from her responsibilities to communicate with Scalzo.  To treat it otherwise would be an example of the adage "no good deed goes unpunished."

### D.  Adams' Retaliation Claim

An employee's meeting her notice obligation to an employer of a need for FMLA leave is essential to a FMLA retaliation claim.  <u>Bosley</u>, 705 F.3d at 784.  Here, Adams did not follow the usual call-in procedures, and therefore did not meet the notice requirement.  There is no genuine issue of material fact regarding Adams' failure to meet her notice obligation.  Thus, Adams has failed to make a prima facie case for FMLA retaliation.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 16] is **DENIED**; and,

2. Defendant's Motion for Summary Judgment [Docket No. 25] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 25, 2014.